THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SALVATORE BUCCOLA, Appellant.

First Department, November 3, 1933.

*William P. Thomas,* for the appellant.

*LeRoy Mandle, Deputy Assistant District Attorney,* of counsel [*Thomas C. T. Crain, District Attorney*], for the respondent.

GLENNON, J. The defendant Salvatore Buccola was convicted in the Court of General Sessions of robbery in the first degree and sentenced to State prison at hard labor for a term of not less than fifteen years, nor more than thirty years.

In the indictment it was charged that Buccola and one Angelo Squillante, together with two others, committed the crimes set forth therein at Gristede Bros., Inc., in the county of New York, on the night of October 8, 1932. The indictment was returned on December 19, 1932. The trial was commenced on January 11, 1933, and at four-thirty-five on the afternoon of that day Buccola was found guilty and Squillante was acquitted.

On the back of the indictment appear the names of one Henry Breden and one Joseph Billone, as the witnesses who testified before the grand jury. The defendants were not arraigned in the Magistrate's Court. Breden and Billone, who were in a position to testify concerning the actual commission of the crime, were the principal witnesses called by the People.

The testimony of Mr. Breden, the manager of Gristede Bros., Inc., was to the effect that between twelve-thirty and twelve-forty-five on the night of October 8, 1932, four men entered Gristede Bros., Inc., place of business at 438 East One Hundred and Fourth street, and ordered him and eleven other employees to put up their hands. They were then directed to go into a rear room. There he was asked by the defendant Buccola, " Who is manager here? " and, on being informed by Breden that he was, a revolver was placed at his back and he was ordered to go to the office and open the safe. A can was removed therefrom which contained the payroll and petty cash. After the money, amounting to $702, was taken, Breden was returned to the room and locked in with the others. Breden identified Buccola and Squillante as two of the four men who had committed the crime. He was positive that Squillante

was an accomplice of Buccola. Apparently the jury did not believe the testimony of Breden in so far as it related to Squillante, since he was found not guilty.

Mr. Billone testified that he was in the employ of Gristede Bros., Inc. He also was ordered to raise his hands and was directed to go into the rear room with the other employees. He was unable to identify Squillante. He testified in reference to the appellant, in part as follows: " *Buccola there, he looks very familiar.* \* \* \* Q. How much of a look did you have at those men that came in? How many did you see? A. I seen two of them when they first came in and after they had us in the room, I seen two or three other fellows. I did not quite see their faces, of one or two. But the other two I recognized very well. Q. Will you say that both these defendants were there that night? A. No, sir, only one. Q. You identify one? A. Yes. Q. Is that one Buccola? A. Buccola. Q. Which one is Buccola? A. That gentleman there (indicating the defendant Buccola)."

The conviction of this defendant must have rested upon the testimony of the witness Billone, in addition to that given by Breden.

The arrests in this case were not made until the month of December, over two months after the commission of the offense.

On November twenty-eighth Breden was taken by a detective to the Bronx county court house where he identified Squillante. However, no arrest was made on that day. On December fourth or fifth he was shown a picture of Buccola by another detective named Kiley. This picture was exhibited not only to Breden but to all the other employees as well. On the fourteenth day of December he went to the court house at Riverhead, Long Island, with a detective and there pointed out Buccola.

During the course of his cross-examination, Breden was asked by one of the attorneys for the defendants for the names and addresses of the other employees who were present on the night of October eighth. At the close of the People's case, after the formal motion to dismiss was denied, the following appears: " Mr. Thomas: Exception, please. Now, in view of my cross-examination this morning, I am somewhat taken aback at learning of these other witnesses and I most respectfully ask at this time for an adjournment so that I may have these witnesses who have been named, subpœnaed to be here tomorrow morning to testify as witnesses for the defense. The Court: The officer testified that they were brought down to Headquarters and did not identify these men. We have that in the record. Mr. Thomas: That may be even his conclusion, but I want these men, whom I don't know,

brought before this jury and examined by me as witnesses for the defense. The Court: If they cannot identify them, that is the end of it. Mr. Thomas: That may be our conclusion. The Court: Motion denied. Mr. Thomas: Exception."

The request was made and denied at the close of the morning session. We believe that the court, in order to afford both of these defendants a fair and impartial trial, should have granted the request for an adjournment. It is idle for the People to argue now that the defendants could have subpœnaed these witnesses prior to the opening of the trial on January eleventh. Their names did not appear on the indictment and the record shows no such contention was made at the time the request for a short adjournment was made. Apparently the only person, in any way connected with the defendants, who had an opportunity to interview Mr. Breden, was the father of the defendant Squillante. The talk he had with Mr. Breden concerned the identification of his son. Not only do we believe that the court was in error in refusing to grant the adjournment, but in addition thereto the charge on the point of the failure to call these other witnesses was highly improper. The court said in part: " The People rely in this case on the fact of the two identifications. They say, there are two reasons why they need not prove any more, or need not produce any other witnesses, because other people up in the store for whatever reason — either because they are honestly in doubt, or because perhaps they do not care to be involved in the case — have told the officers, as counsel stated, that they could not identify these defendants. *So it would be a foolish gesture on the part of the prosecutor to call them down here and ask them to take the stand as witnesses.* Of course, you have no right to assume that if they were here, they would give affirmative testimony. You have no right to assume that if they were called they would go on the stand and say definitely, ' These are not the men.' All the testimony we have here on that point, and by which we should be guided is to the effect that when they were shown these pictures or confronted with these one or more of the defendants at Headquarters, they simply said, ' We cannot identify them.' "

An exception was properly noted to the charge as follows: " Mr. Thomas: I take an exception to that part in your Honor's charge wherein you commented upon the witnesses who were not called, where you said to the jury that perhaps they were afraid to come down, or did not want to come and get mixed up in this transaction — as being an unfair assumption, for the reason that if called down, they would be positive that my client was not there. Mr. Cotton: I join in that exception. The Court: Both counsel

have an exception. That is a question on which the jury will use their own good judgment."

Furthermore the court was in error when he charged as follows: " The witness Billone testified that he cannot identify Squillante, but that he does identify Buccola. It is quite true, as counsel say, that his first statement was, ' *I am very familiar with him;* ' but later on in his testimony, he repeated in words two or three times, ' I know him very well.' "

What the witness Billone actually said was, " Buccola there, he looks very familiar."

We have searched the record in vain to bear out the court's statement that he " repeated in words two or three times, ' I know him very well.' " The witness testified that the first time he saw Buccola was on the night of October eighth. One can readily understand, therefore, that the jury undoubtedly was improperly influenced when the court quoted the witness as saying, " I am very familiar with him," " I know him very well."

In *People* v. *Fanning* (131 N. Y. 659, 663) Judge Peckham said: " In a criminal case we think the judge has the right, and indeed it is his duty to present the evidence to the jury in such light and with such comments that the jury may see its relevancy and pertinency to the particular issue upon which it was admitted, and thus be better qualified to appreciate its character and weight and to determine its credibility. These questions are for the jury, but it is proper that a judge should assist the jury in marshalling the evidence so that they may the more readily and intelligently come to a conclusion which shall be satisfactory to themselves, consistent with the evidence and in accordance with the law. *The judge should do this in a fair and impartial manner, having due regard to the rights of the defendant and with a serious and anxious desire for their preservation.*"

In commenting upon the testimony of the witnesses for the People the court charged as follows: " You should also consider on the question of identification the intelligence of the man who makes the charge, the way in which he gives his testimony, and especially what interest he could have in the case. What malice could Mr. Breden have towards either one of these defendants, whom he testifies he had never seen up to that time. Each one of the defendants, as I recall, testified he had never had any contact either with Breden or Billone. Do you think it likely or unlikely that a man of Mr. Breden's intelligence and demeanor is going to just pick out two men and positively swear that those are the men who did a certain thing, unless he was absolutely sure of it? "

When, however, he came to a discussion concerning the credibility

of the defendants he stated: "You may consider what interest each defendant has in *trying to get out of the serious predicament that each stands in at the moment.*"

We find nothing which was likely to impress the jury favorably with the testimony given by the defendants, whereas the main witness for the People was in effect praised for his intelligence, demeanor and lack of malice toward these defendants.

This defendant did not have the fair and impartial trial to which he was entitled.

In *People* v. *Wolf* (183 N. Y. 464, at p. 472) Judge VANN said: "An unfair trial, especially in a criminal case, is a reproach to the administration of justice and casts grave responsibility not only upon the prosecuting officer but also upon the trial judge. However strong the evidence against the defendant may be, if she did not have a fair trial, as shown by the rulings of the court subject to proper objections and exceptions, the judgment of conviction should be reversed and a new trial ordered so that she may be tried according to law."

The judgment of conviction should be reversed and a new trial ordered.

TOWNLEY and UNTERMYER, JJ., concur; FINCH, P. J., and MERRELL, J., dissent and vote for affirmance.

MERRELL, J. (dissenting). I must dissent from the impending reversal of the judgment of conviction of the defendant Buccola. In my opinion, the jury were fully justified in finding the defendant guilty of the crime charged.

Shortly after midnight of October 8, 1932, the business establishment of Gristede Bros., Inc., at 438 East One Hundred and Fourth street, New York city, was held up by a band of armed robbers, who, at the point of a gun, compelled the business manager of the establishment to open its safe, and $702 were taken therefrom by the robbers, who, after locking the manager and several other employees in a room, departed with their loot. Some weeks later the defendant was identified by the business manager of Gristede Bros., Inc., and another employee as the ringleader of the hold-up, and his indictment and trial, resulting in his conviction, followed. The defendant denied any participation in the robbery. The jury were left to decide between the testimony of the two witnesses for the People, who positively identified the defendant as the ringleader of the bandits, and that of the defendant, who asserted his innocence. A perusal of the evidence given, it seems to me, leaves no reasonable doubt as to the defendant's guilt. The jury were fully justified, under the evidence, in finding the defendant

guilty. It was for the jury to decide that question. This court, not having had the opportunity of seeing the witnesses or hearing their testimony, may not properly override the determination of the triers of the fact. The defendant was positively identified as the leader of the robbery by two employees of Gristede Bros., Inc. Both of these identifying witnesses were employees of the business of long standing, and were apparently men of candor and intelligence. For many years the witness Breden had been the business manager of the concern. He first identified the defendant from a photograph and, later, pointed out the defendant in a line-up at police headquarters. The question at once arises: What possible motive could these trusted employees have in accusing the defendant? What malice could either of them have had against the defendant? Neither had any previous acquaintance with him, and yet the court is criticized for suggesting such inquiries to the jury. The court is also criticized for saying to the jury that they should consider the intelligence of the People's witnesses and the manner in which they testified, and as to any motives they might have in accusing the defendant, and the court is criticized for saying nothing likely to impress the jury favorably to the defendant. In answer to such criticisms, it is always proper for a court, in aid of a jury's determination of facts, to call their attention to anything that may aid them in arriving at a just conclusion. In this case the jury had listened to the apparently candid and straightforward testimony of the manager, Breden, and his fellow-employee and their positive identification of the defendant as the ringleader of the robbers. As against that, the jury listened to the testimony of the defendant denying participation in the robbery. In view of the criminal record of the defendant and the testimony which he gave at the trial, interspersed with some profanity while on the witness stand, the court may well have hesitated to refer to the defendant's testimony and demeanor upon the witness stand. It is quite likely that the jury did compare the testimony of the trusted employees of the robbed establishment with that given by the defendant. I think the charge of the court was eminently fair and impartial, and that the court is not open to criticism for anything said in submitting the case to the jury. This robbery was no different from thousands of others occurring almost hourly in the great city of New York, and if criminals who are positively identified are to escape punishment merely because they deny their guilt, there is little use in attempting to prevent crimes of violence.

At the time of the robbery there was a considerable number of other employees of Gristede Bros., Inc., present. None of

these employees, save the two mentioned, was sworn on behalf of the People, but it appeared from the evidence of a detective, who was sworn, that, with the exception of the two identifying witnesses, the others present were unable to identify the defendant. Neither of these other witnesses was produced at the trial, and, at the close of the trial, counsel for the defendant asked for an adjournment of the trial so that he might procure the attendance of said absent witnesses. This application was denied by the court upon the ground that it already appeared in the testimony that neither of said witnesses could identify the defendant. It further appeared that the father of a codefendant had visited the robbed establishment and had conferred with the business manager, Breden, in relation to his son's guilt. The father knew that the several witnesses were present, and, had the defendant really desired their attendance, they could have been subpœnaed in his behalf. The refusal of the court to prolong the trial was seized upon as a pretext for obtaining a reversal of the judgment of conviction. I think such pretext is of no substance whatever, and is simply being used for the purpose of thwarting justice. In my opinion, this court should not look with favor upon such an unsubstantial pretext to give the defendant another chance to escape punishment for the crime which he committed. If criminals are to be permitted to seize upon such unsubstantial pretexts for granting them a chance of escape from their just deserts, criminal trials are of little use in combating the existing crime wave.

The judgment of conviction should be affirmed.

FINCH, P. J., concurs.

Judgment reversed and a new trial ordered.