In the Matter of H. NILE EDDY, an Attorney, Respondent.

Fourth Department, January 15, 1937.

*H. H. Cohen,* for the respondent, for the motion.

*Daniel J. O'Mara, District Attorney,* and *Stephen K. Pollard, Assistant District Attorney,* for the petitioner, opposed.

LEWIS, J. The report of an official referee in a disciplinary proceeding is before us on motion for confirmation. It deals with two specific charges, the first of which accuses the respondent of having presented at a Special Term of the Supreme Court certain proof in an action for divorce which he knew at the time to be false. We concur with the finding of the referee that the proof fails to sustain this charge. Accordingly we dismiss the same.

The record affords ample proof, however, to warrant disciplinary action upon the second charge which is as follows:

" B. Upon information and belief, that during the past five years on many occasions, the respondent has accepted employment from a lay intermediary, to wit, one Frank Holloran, as attorney for plaintiffs in numerous divorce actions."

The respondent was admitted to the bar by the Appellate Division of the Supreme Court, Third Judicial Department, on May 28, 1915. Thereafter he practiced as an attorney in this State successively in the village of Ilion and the cities of New York and Rochester. In 1934 he leased desk space in the office of another attorney in Rochester where he met one Frank Holloran who held himself out as a private investigator. Holloran's status in the office may be understood from the respondent's statement: " He didn't occupy the office with us. He had an arrangement whereby he got his telephone calls there and met people." There came a time shortly thereafter when the attorney who was respondent's lessor was about to move his office to another building and asked the respondent to take space in the new suite. When the respondent expressed doubt as to his ability to pay an increased office rental, Holloran — who apparently participated in the conference — stated to him: " ' Well, if you go over there, I have got an arrangement with Mr. (X) whereby I will use that as my Rochester headquarters when I am not in Niagara Falls. There is cases where the people that I am representing do not have attorneys. I will see that you get one or two of those now and then to help you with any additional expense.' " It was this arrangement which gradually led to the course of conduct by the respondent which is largely responsible for this proceeding.

Without giving the evidence in detail, it is sufficient to say that the record discloses numerous instances of matrimonial actions in which the respondent was attorney of record for the plaintiffs, which were tried by him upon proof supplied by the aid of Holloran. The respondent admits that under their arrangement in these cases the fees from a successful plaintiff were first paid to Holloran, who retained a portion for his services as investigator, and in turn paid the respondent for whatever legal services he might have performed. In the words of the respondent: " Holloran handled the money." It was he who negotiated with the plaintiffs as to the amount of the fees. The respondent also admits that in these matrimonial actions it was his practice to prepare complaints without previous consultation with the plaintiffs whose interests he was to represent. He relied upon information given to him by Holloran and, although the complaints were later verified, it often

occurred that he would not meet the witnesses or his client until a short time before the hearing in court. The character of the arrangement existing between this so-called private investigator and the respondent is made clear by the following testimony given by the respondent himself: " Q. You knew the more cases Holloran got the more business you and (X) were going to have? A. Of course, that would be the natural result. Q. Because in these cases that he got, and that were brought to trial in Monroe County, he either paid you or paid (X) something to do the legal work for him; that is right, isn't it? A. I don't exactly like the way you have worded it, but that is the substance of it."

We strongly condemn an alliance such as the one thus disclosed. It is a rule of first importance governing the conduct of a lawyer that his relation to his client should be personal; that his responsibility should be direct. The professional services which he is called upon to render should not be controlled or exploited by a lay agency which intervenes between his client and himself. His effort should be to avoid any relationship which directs the performance of his duties by or in the interest of such intermediary. (See Canons of Professional Ethics, No. 35, adopted by the American Bar Association, July 26, 1928, amended August 31, 1933, and by the New York State Bar Association, January 28, 1909, amended January 25, 1934.)

The record discloses a course of conduct by the respondent which we regard as prejudicial to the administration of justice (Judiciary Law, § 88, subd. 2); it was concerned with matrimonial cases which have to do with the status of citizens in respects in which the State has a peculiar interest. The fact that it was in this type of case that respondent's offenses occurred adds to their seriousness.

We conclude that the respondent should be suspended from practice for one year and until the further order of the court.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Report of the referee confirmed; charge number one dismissed, and charge number two sustained. Order entered suspending respondent from practice for a period of one year and thereafter until the further order of this court.