Thomas Dickens, J.
In 1936, defendant, who had then been indicted on a number of counts involving moral turpitude, was subsequently convicted after trial, and later, sentenced to a cumulative .term of not less than 25 years nor more than 40. He now moves, by coram nobis, in conformity with the authority of People v. Shaver (26 A D 2d 735) to invalidate the sentence.
The gravamen of this application, in its employment as the medium of attack upon the validity of the sentence imposed upon defendant, has, as pressed by defendant, for its pitch the nervus probandi of constitutionality, predicated upon the faultfinding of being deprived, at the time of sentence, of counsel of his own choice — a deprivation, he contends,- which had the effect of violating his protection under the Constitution.
More concisely put, defendant makes prominent the critical point that an attorney named John Valluzzi, a stranger, who was other .than the attorney Ceasar Barra, whom he had retained to represent him throughout the case, had allegedly stood up for him at the imposition of sentence; but, that, defendant contends further, Valluzzi, so far as defendant was concerned, did without book. As a result, he now feels that he had, after that had happened, become a defendant inops consilii, that is, a defendant without further aid of personal counsel.
*541 A hearing was recently held on this motion, at which time defendant testified, in support of his application, that on the day of sentence Mr. Barra did not appear, but, instead, Mr. Yalluzzi appeared and addressed the court.
At this hearing defendant, when answering all questions in chief, steadfastly persisted that he had never retained Yalluzzi as his attorney to represent him at the sentencing, nor given Yalluzzi authority to speak for him on sentence day; that he had neither spoken to Yalluzzi on the day of sentence nor spoken to him prior thereto nor thereafter. He, in effect, drove home by assertion the fact that he had engaged only the above-named Ceasar Barra to represent him in this prosecution, from stem to stern, that is, representation from the time of arraignment to the final disposition of the sentence.
Cross-examination of defendant by the District Attorney produced confirmatory testimony that Yalluzzi had not been chosen as representative attorney by defendant, but, instead, Yalluzzi had acted as representative attorney for Barra.
And, on redirect examination, defendant substantially confirmed what he had stated on direct examination.
At this hearing, the People produced, in support of their case, the attorney Yalluzzi as a witness for the State. Of course, by way of a parenthetical observation, it goes without saying that his testimony became binding on the People, for by adopting him as their witness they vouched for his credibility and thereby held him out as worthy of belief (People v. Cosad, 253 App. Div. 104). Consequently, his testimony is highly important and must be given serious thought in resolving the issue.
All told, defendant declares, in effect, that Yalluzzi’s testimony tends to add, first and last, strong support to defendant’s charge that the deprivation of counsel of his own choice subverted his rights, and, therefore, such act fell under the ban of the law as a palpable perversion of justice and was anticonstitutional.
The first requisite for wider factual enlightenment, reflecting on the controversial issue as a means for helpful solution, is the process of making an anatomized inspection of the material evidence put forth at the hearing of this coram nobis motion. With such material evidence, sifted and then welded together to serve as a background, I am of the persuasive opinion that a proper determination of the vital issue can be arrived at when this background of the evidence is cast in the light of the applicable principles of law, cited hereinafter.
After stating that he had started as a clerk in Barra’s office, then later, after being admitted to the Bar, he performed, as a “minor functionary,” certain “chores” in exchange for *542 office space and facilities, Vallussi acknowledged that he had represented Barra who represented defendant, a fact of which he had knowledge, and that his best recollection was that he had never spoken to defendant, and particularly, that he had not spoken to defendant concerning defendant’s consent to have him appear as defendant’s attorney, nor had he told the court that defendant had consented to his, Vallussi’s, representation as defendant’s attorney.
As a side light, I refer to Valluzzi’s admission on the witness stand, to wit, that he had never tried a criminal case, his practice as an admitted attorney consisting of civil litigation.
The following excerpts, as illustrations, from Valluzzi’s testimony, will not be amiss at this time as corroborating proof that, so far as defendant was concerned, Valluzzi’s status as proctor counsel for defendant by uninvited devolution, was solely a representation ab invito.
In his direct examination of Valluzzi, the District Attorney, apparently with the object of showing that defendant had representation at the time of sentencing (although its effect against the People assumed the mark, at least, by implication, of an admission against interest), read, in question form, a statement made to the court by Valluzzi, at the time of sentencing, the pertinent part of which was as follows: “ Mr. John J. Valluzzi: If your Honor please, I represent Mr. Barra, who represents the defendants Pennochio, and Betillo.” (Emphasis supplied.)
And, on pages 92 and 93 of Valluzzi’s examination in chief at the hearing, appear the question put to him by me and his answer:
“ the court : Did you tell the defendant that you were representing him for Mr. Barra?
“ the witness: I don’t think so, Judge. I don’t remember that, Judge. I remember going up there and saying, ‘ I represent Mr. Barra', I represent the defendant.’” (Emphasis supplied.)
The whole outcome of the case turns upon these cardinal questions: Was the office association of Valluzzi with Barra sufficient enough as a factor in law to vest, by Barra’s direction, Valluzzi with vicarious authority to appear for defendant at the sentencing, although neither Valluzzi nor Barra had obtained consent from defendant? Furthermore, did such association make consent unnecessary?
It must be borne in mind, in rendering an answer to either question, that, as the minutes indicate, in the activity of affairs at the sentencing, defendant, as a layman, standing before the *543 court, could only pay the piper as defendant; he could not call the tune as attorney, so to speak, in view of his arranged reliance upon his hired attorney, Barra, to take up the cudgels for him.
In order to consider these questions within circumscribed bounds befitting the situation here, it may be apropos to note, before reviewing the authorities, four well-established tenets that should, in judging the factors of concern here, be adhered to, in the face of the unimpeached weight of the proof evolved from the minutes of this hearing showing nonconsent. These tenets are:
1. That which [absence of consent] is proved by the record ought not to be denied (Ballentine’s Law Dictionary, p. 1078).
2. The fact [absence of consent] not appearing is presumed not to exist (Ballentine’s Law Dictionary, p. 1077).
3. The formalities of the law must be observed (Ballentine’s Law Dictionary, p. 1213. See, also, Matter of Remy Sportswear, 16 Misc 2d 407.)
4. Words should be taken most strongly against him [Valluzzi] who uses them (People v. Ponitsz 23 Misc 2d 325, 329).
Reference to a number of legal landmarks, distilled from a cyclopedic research, will lead to the inevitable conclusion that consent to represent falls here within constitutional safeguards. These legal landmarks will attest to the view that all logical reasoning is on the side of upholding the requirement of consent. It is well known in the legal profession that the highest courts have placed the seal of condemnation, as a general rule, upon violations of constitutional rights. This ruling by the high tribunals has become axiomatic. It will be shown here that lack of consent is one of the violations within the sphere of constitutional rights.
To begin, it is fundamental, as a set principle of law, that a defendant charged with the commission of a crime must be accorded every constitutional safeguard (Williams v. Kaiser, 323 U. S. 471; People v. McLaughlin, 291 N. Y. 480).
Even the worst malefactor must be given a fair trial in accordance with the Constitution and the statutes (Matter of Dennis, 20 A D 2d 86). A defendant is entitled to a fair trial, no matter what his own character may have been (People v. Infantino, 224 App. Div. 193; People v. Hill, 224 App. Div. 779). Guilty or not guilty, a defendant is still entitled to a fair trial (People v. Bai, 7NY 2d 152) and regardless of guilt, even the criminal most deserving of punishment, is entitled to a fair and impartial trial (People v. Herman, 253 App. Div. 314). The *544 law is no respecter of persons and suffers no man, be he guilty or innocent, to be deprived of his liberty except by due process of law (People ex rel. Tweed v. Liscomb, 60 N. Y. 559, 569). If a fair trial, regardless of his crime or the force of the evidence, is not accorded him, the result must be set aside (People v. Easton, 307 N. Y. 336; People v. Buccola, 239 App. Div. 356). No one is so low as to be beneath the protection of the law (Matter of Remy Sportswear, 16 Misc 2d 407, supra).
Failure to accord a fair trial is not a mere technical error but affects the substantial right of a defendant in a criminal prosecution (People v. Wilkie, 286 App. Div. 835). (See, also, People v. Bransby, 32 N. Y. 525, 535; Hill v. People, 20 N. Y. 363, 369; People v. Creasy, 236 N. Y. 205, 224.)
For the purpose of pointedly elaborating on the theme of a fair trial, I quote from People v. Marwig (227 N. Y. 382, 389): “ the worst of men brought to its [court’s] bar are to be tried according to uniform and established rules and practice.” (See, also, People v. Levan, 295 N. Y. 26; People v. Jackson, 2 Misc 2d 521.)
Is sentencing part of the trial? The answer is, yes. A trial has, by authority been declared to be, in common parlance, a session beginning with arraignment and terminating with verdict and sentence (People v. Colon, 18 Misc 2d 1061, 1064; People v. Landers, 264 N. Y. 119,123, rearg. den. 264 N. Y. 665). The trial in a criminal case is not over until the sentence of the court is entered in the minutes of the court. The pronouncement of sentence is the judgment of the court in a criminal case (People ex rel. O’Connor v. Weinfeld, 47 Misc 2d 228). A sentence of imprisonment is a solemn pronouncement (People ex rel. Rainone v. Murphy, 1 N Y 2d 367, 372).
The right to counsel is fundamental (People v. Friedlander, 16 N Y 2d 248; People v. Hasenstab, 45 Misc 2d 105). Such right includes the right to be represented by an attorney at the imposition of sentence (People v. San Souci, 23 A D 2d 352, affd. 17 N Y 2d 684). Counsel must be of defendant’s own choosing in a criminal case (People v. Douglas, 19 A D 2d 455; People v. Hernandez, 8 N Y 2d 345, cert. den. 366 U. S. 976). (See, also, People v. Fitch, 25 A D 2d 783.) A right to counsel belongs to defendant at every stage of a criminal proceeding (People v. Shaver, 26 A D 2d 735, supra, citing Gideon v. Wainright, 372 U. S. 335).
Although the record may indicate that an attorney had appeared for defendant, defendant nevertheless, is not estopped to challenge the appearance as unauthorized (Howard v. Smith, 3 Jones & Sp. 131). And, the burden is not upon defendant to *545 establish that the denial of counsel of his own choice resulted in prejudice (Chapman v. California, 386 U. S. 18).
The right to counsel at every stage of the proceeding must be given retroactive application (People v. Shaver, 26 A D 2d 735, citing Gideon v. Wainright, 372 U. S. 335, supra). (See, also, Johnson v. Zerbst, 304 U. S. 458; Bojinoff v. People, 299 N. Y. 143.) The remedy for the correction of illegal or erroneous sentences lies without express limitation (People v. Wilson, 18 A D 2d 424, affd. 13 N Y 2d 277, app. dsmd. 377 U. S. 925).
A waiver of the constitutional and statutory right to counsel is occasioned only when an accused acts understandingly, competently, and intelligently (People v. Witenski, 15 N Y 2d 392; Gideon v. Wainright, 372 U. S. 335, supra). Every presumption is against a waiver where fundamental constitutional rights are involved (People v. McAllister, 194 Misc. 674). Waiver is not permitted where a question of jurisdiction or fundamental rights are of concern (People v. Miles, 289 N. Y. 360). In the administration of justice, fundamentals are not waived by failure to object (People v. Wallens, 297 N. Y. 57). There cannot be a waiver of anything that is essential to the full benefit or protection which the right is designed to safeguard (People v. Cosmo, 205 N. Y. 91, 96).
An attorney is a mere agent of his client and is supposed to follow his instructions and carry out the agreement of Ms principal (Publishers’ Print. Co. v. Gillin Print. Co., 16 Misc. 558, 559). (See, also, Donohue v. Hungerford, 1 App. Div. 528.) A delicate and confidential relationship exists between attorney and client (Matter of Prospect Ave., 85 Hun 257; Reinwald v. Chemical Bank & Trust Co., 205 Misc. 335, affd. 283 App. Div. 966, mot. for lv. to app. den. 283 App. Div. 1079). It is a rule of first importance governing the conduct of a lawyer that his relationship to his client should be personal; that his responsibility should be direct (Matter of Eddy, 249 App. Div. 449). Without specific authority from his principal, an agent has no power to delegate his trust. The relation of principal and agent does not exist between the principal and a subagent (O. A. Skutt, Inc. v. J. S H. Goodwin, Ltd., 251 App. Div. 84). (See, also, Matter of Spanier, 148 Misc. 879, affd. 241 App. Div. 615; People ex rel. Cohoes Ry. Co. v. Public Serv. Comm., 143 App. Div. 769, affd. 202 N. Y. 547.) “An agent is held to uberrima fides [perfect good faith] in his dealings with Ms principal ”. (Murray v. Beard, 102 N. Y. 505, 508).
The minutes of the hearing reveal, as indicated heretofore, that the People seemed to proceed on the theory that the association of Barra, Ms hired attorney, with Valluzzi and other *546 attorneys, who occupied the same suite of offices with him, warranted Barra’s designation of Valluzzi, as one of them, to represent defendant at the sentence. Such theory the law does not countenance. The law does not countenance even association in the prosecution of a crime, without anything else shown to connect a defendant with the crime. In such an instance, the proof is not adequate to make out a case (People v. Sclafani, 8 Misc 2d 986, 987; People v. Kress, 284 N. Y. 452, 460; People v. Mullens, 292 N. Y. 408).
Such view regarding association emphatically does not consist with the law. Consent is the prime factor.
It has been written that a retained attorney is not authorized to hire another attorney or to delegate his authority to another without the consent of his client (Grennan v. Well Built Sales of Richmond County, 35 Misc 2d 905; Lacher v. Gordon, 127 App. Div. 140; Beeber v. Empire Power Corp., 31 N. Y. S. 2d 920; Matter of Heilbronner, 39 Misc 2d 912). Nor has he a right to delegate authority given him to his clerh to appear for the client without the client’s acquiescence (Matter of Prospect Ave., 85 Hun 257, supra).
Conjugating the evidence with particular stress on Valluzzi’s testimony, unfavorable, as seen, to the People, but clearly favorable to defendant, and conjugating the authorities, it follows therefrom that when both categories are considered together they certainly do spell out, as stern factors, the conviction that defendant’s grievance is not fanciful, but is, in law, a product of actuality; that is, that his constitutional rights had been transgressed, and so, the situation must be given judicial recognition, even though the crimes, for which defendant has been prosecuted, were probably considered to be odious, and even though the case then may have been regarded as a cause célebre. The law should be consistent with justice.
In brief, I grant the motion to set aside the judgment of conviction herein to the extent only of vacating the sentence imposed and of having the defendant remanded for resentencing to be held on the 15th day of May, 1967, at 10 a.m., in Part 31.