**In the Matter of Conrad P. SMITH, a Member of the Bar of the District of Columbia Court of Appeals.**

**No. DP–33–77/S–57–79.**

District of Columbia Court of Appeals.

Argued April 9, 1979.

Decided June 13, 1979.

Robin Alexander Smith, Asst. Bar Counsel, Washington, D. C., with whom Fred Grabowsky, Bar Counsel, Washington, D. C., was on the brief, for Bd. on Professional Responsibility.

Rohulamin Quander, Washington, D. C., for respondent.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

NEWMAN, Chief Judge:

Following investigations and hearings, the Board on Professional Responsibility (the Board) found that Conrad P. Smith (respondent), a member of the Bar of the District of Columbia Court of Appeals, had violated several provisions of the Rules of Professional Conduct, *see* D.C.App.R. X, in two separate cases. Pursuant to D.C. App.R. XI, Sec. 7(3), the Board has submitted to this court its recommendations that respondent be suspended from the practice of law for eighteen months and that he be required to make restitution of $280 to Georgia Scales, one of the complainants. In Part I, we review the findings, conclusions, and recommendations of the

Hearing Committee, and of the Board. In Part II, we consider whether the Board acted improperly by reinstating a charge against respondent that was brought to light in the course of a hearing on another charge. In Part III, we consider whether the Board's findings are supported by an adequate evidentiary foundation in the record, and, in Part IV, we consider whether the sanctions recommended by the Board are appropriate. We affirm the Board's findings and conclusions, and we conclude that the sanctions recommended by the Board are appropriate.

I

*The Scales Case—Docket No. 23–76*

Shortly after the death of her father, Georgia Scales approached respondent to obtain his services in determining whether her father had left any assets. Respondent did not commit himself to represent Ms. Scales when they met in February 1973. Shortly after that meeting respondent made a preliminary investigation and concluded that Ms. Scales' father had not left sufficient assets to warrant proceeding further. Nonetheless, on May 26, 1973, respondent wrote Ms. Scales that he was "prepared to move ahead with this action," but that he would need a $280 retainer in order to pay "legal filing fees and other disbursements." Ms. Scales sent a money order for $280, and respondent wrote back that he would proceed with the investigation.

Respondent did no further work on the matter and apparently avoided any contact with Ms. Scales. Ms. Scales made numerous unsuccessful attempts to reach respondent by telephone. In May 1975, Ms. Scales wrote a letter demanding information about the status of respondent's investigation. Respondent received the letter but did not reply. In September 1976, Ms. Scales retained another lawyer to make in-

quiries into the matter for her, and he filed a complaint against respondent with the Board on her behalf.

After a preliminary investigation, respondent was charged formally with violating Disciplinary Rules 6–101(A)(3)[1] and 7–101(A)(1) & (2).[2] The matter was referred to a Hearing Committee. At the hearing on October 20, 1977, respondent, who appeared *pro se,* stated, "[I]f there's anything that I've done wrong as a lawyer, it is in the using of subterfuge in getting the money for the work that I had already done for these people." As a result of this and similar statements made at the hearing, formal charges were filed against respondent for violating DR 1–102(A)(4).[3] This charge was joined to the others, and, after a second hearing on March 16, 1978, the Hearing Committee found that respondent had violated DRs 6–101(A)(3) and 7–101(a)(1) & (2) but dismissed the charge under DR 1–102(A)(4) on the belief that it was barred by due process under the Supreme Court's decision in *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Bar Counsel appealed this decision to the Board. The Hearing Committee recommended that respondent reimburse Ms. Scales and that he be censured publicly by the Court of Appeals.

*The Gregory Case—Docket No. 123–77*

In the autumn of 1975, Theodora Gregory received a summons to appear in Landlord and Tenant court on October 24, 1975. At that time Ms. Gregory approached respondent and retained him to represent her in the matter. Respondent told Ms. Gregory that she need not appear in court because he would appear for her and attempt to negotiate a settlement with the landlord. On October 24, 1975, respondent appeared and obtained a continuance until November 5, 1975.

---

1. DR 6–101(A)(3) states: "A lawyer shall not: (3) Neglect a legal matter entrusted to him."

2. DR 7–101(A)(1) & (2) state, in pertinent part: "A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules . . . .. (2) Fail to

carry out a contract of employment entered into with a client for professional services . . . .."

3. DR 1–102(A)(4) states: "A lawyer shall not: (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

At this point the testimony diverges. Ms. Gregory testified that respondent called her between October 24 and November 5 and told her only that she need not appear in court on November 5 because he would represent her. Respondent testified that on October 24 he reached an agreement with the landlord, and that he called Ms. Gregory to tell her that the landlord would make certain repairs after which she should pay the rent. Respondent also testified of a second telephone call in which he told Ms. Gregory that the landlord's repairman had gone to her apartment but that she had refused to admit him.

Respondent did not appear in court on November 5, and consequently a default judgment was entered against Ms. Gregory resulting eventually in her eviction. At no time did respondent withdraw his appearance on behalf of Ms. Gregory in the Landlord and Tenant action, inform her that he would not appear in court on November 5, advise her to retain other counsel, or take further action with regard to the pending suit. Ms. Gregory sued respondent for professional negligence, eventually recovering $6,000 damages, and she filed a complaint with the Board. After a preliminary investigation, respondent was charged formally with violating, *inter alia,* DRs 6–101(A)(3), 7–101(A)(1)–(3),[4] and 1–102(A)(5).[5] At the hearing on May 24, 1978, before a Hearing Committee, respondent stated that after Ms. Gregory failed to cooperate with his settlement, he felt no further obligation to her. The Hearing Committee found against respondent on these counts and recommended that he be suspended from the practice of law for six months.

### The Board's Decision

The Board considered the *Scales* and *Gregory* cases together. Respondent presented no brief in opposition and, although he indicated that he would offer an oral argument before the Board, he did not appear at the hearing.

The Board found in each case that the record revealed respondent's "callous disregard for the interests of his clients, in violation of his legal and ethical obligations to those who were relying upon him."

In *Gregory,* the Board found that "abundant evidence supports the findings and recommendation" and noted that respondent acknowledged that he never withdraw his appearance as attorney of record. Even if it accepted as true respondent's version of the facts that the client failed to cooperate with the settlement agreement, the Board stated, "there is no justification whatever of Mr. Smith's unilateral—*and uncommunicated*—decision to abandon his representation." [Emphasis in the original.] The Board noted that if it was considering this charge alone, it would accept the Hearing Committee's recommended sanction of a six-month suspension.

In the *Scales* case, the Board expressed some doubts as to whether the Hearing Committee's findings supported the charges of intentional abandonment brought under DR 7–101(A)(1) & (2), but it found ample evidence to support a holding that respondent's conduct constituted neglect in violation of DR 6–101(A)(3). In addition, pursuant to Bar Counsel's appeal, the Board reinstated the charge brought under DR 1–102(A)(4). The Board held that *Ruffalo* was distinguishable from the case before it. The Board held that "the evidence is clear and convincing that Mr. Smith violated DR 1–102(A)(4) by making false or fraudulent statements to his client."

In conclusion, the Board found respondent "guilty of intentionally abandoning his client's cause in one case, and neglecting his client's interest, while at the same time deliberately misleading that client, in another." The Board recommended that respondent be required to make restitution of the $280 fee paid by Ms. Scales and that he

---

4. DR 7-101(A)(3) states, in pertinent part: "A lawyer shall not intentionally: (3) Prejudice or damage his client during the course of the professional relationship . . . .."

5. DR 1–102(A)(5) states: "A lawyer shall not: (5) Engage in conduct that is prejudicial to the administration of justice."

be suspended from the practice of law for eighteen months.[6]

## II

Respondent contends that the Board erred when it reinstated the charge brought under DR 1–102(A)(4) in the *Scales* case. The sole grounds for bringing that charge, and the only evidence of respondent's guilt, were supplied by respondent's statements before the Hearing Committee that his letter seeking a retainer from Ms. Scales for work to be done was only a "subterfuge" to obtain payment for the work he had already performed. Respondent argues that, under *In re Ruffalo*, he cannot be charged with disciplinary violations of which he had no notice and to which he admitted during the course of hearings on other alleged violations.

Ruffalo, an Ohio lawyer who handled a number of Federal Employer's Liability Act (FELA) cases, was charged by the bar association with a number of violations of the disciplinary rules including his use of a part-time employee named Orlando to solicit FELA clients. Ruffalo and Orlando both testified that Orlando was employed only to investigate the cases and did not solicit clients on behalf of Ruffalo. During the course of the proceeding, however, it was revealed that Orlando was employed by one of the railroads against which Ruffalo had brought some of his cases.[7] The bar association added this additional charge against Ruffalo in the midst of the hearing and stated that his employment of Orlando to investigate against his employer was "deceptive in nature and was morally and legally wrong." Ruffalo was given a continuance to respond to the new charge. In disbarring Ruffalo, the Ohio Supreme Court concluded that "one who believes that it is proper to employ and pay another to work

against the interests of his regular employer is not qualified to be a member of the Ohio bar." *Mahoning County Bar Ass'n v. Ruffalo*, 176 Ohio St. 263, 269, 199 N.E.2d 396, 401, *cert. denied*, 379 U.S. 931, 85 S.Ct. 328, 13 L.Ed.2d 342 (1964).

The case came before the Supreme Court on appeal from a subsequent disbarment, as reciprocal discipline, by the United States Court of Appeals for the Sixth Circuit. *In re Ruffalo*, 370 F.2d 447 (6th Cir. 1966), *rev'd*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). In reversing that decision, the Court, with Justice Douglas writing for the majority, stated:

In the present case petitioner had no notice that his employment of Orlando would be considered a disbarment offense until *after* both he and Orlando had testified at length on all the material facts pertaining to this phase of the case. As Judge Edwards, dissenting below, said, "Such procedural violation of due process would never pass muster in any normal civil or criminal litigation." 370 F.2d, at 462.

These are adversary proceedings of a quasi-criminal nature. . . . The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.

How the charge would have been met had it been originally included in those levelled against petitioner by the Ohio Board of Commissioners on Grievances and Discipline no one knows.

This absence of fair notice as to the reach of the grievance procedure and the

---

6. Eight members of the Board joined in all aspects of the opinion and the recommendation. One member felt that *In re Ruffalo* prevented finding respondent guilty of the charge brought under DR 1–102(A)(4), but that member joined in all other aspects of the Board's opinion and favored recommending that respondent be suspended from the practice of law for six months.

7. There was no evidence that Orlando ever investigated a case in the yard where he worked as inspector. There was no evidence that he ever investigated on company time. Orlando had no access to confidential information; and there was no claim he ever revealed secret matters or breached any trust. [*In re Ruffalo*, 390 U.S. at 547, 88 S.Ct. 1222, 1224.]

precise nature of the charges deprived petitioner of procedural due process. [*In re Ruffalo*, 390 U.S. at 550–52, 88 S.Ct. at 1226 (citation and footnotes omitted) (emphasis in original).]

Respondent contends that, under *Ruffalo*, an attorney can be sanctioned only for those disciplinary violations enumerated in formal charges. We concur in this much of the argument. Respondent goes on, however, to assert that *Ruffalo* protects an attorney from being sanctioned for any as yet uncharged disciplinary violations that are brought to light through the attorney's admissions in the course of hearings on other charged violations. Thus, respondent urges, we must reverse the Board's holding with respect to the violation of DR 1–102(A)(4) because respondent had not been charged with fraud when he admitted to fraud. Under this reading of *Ruffalo* an attorney could immunize himself from discipline for the bulk of his professional indiscretions by confessing freely at any time after being charged with some trivial violation. We pause to note that this sort of wholesale immunity from sanction is inconsistent with the purpose of bar discipline to protect the public, the courts, and the legal profession from the misconduct of individual attorneys. The question posed by this case is whether this result is compelled, either in general or in the specific instance, by the due process guarantees of procedural and substantive fairness.

A handful of cases have dealt with this question and have arrived at varying conclusions. In *Bar Ass'n v. Cockrell*, 274 Md. 279, 334 A.2d 85 (1975), an attorney was charged with advancing monies to his client beyond the expenses of litigation. In the course of the hearing on this charge, the attorney made statements that led the bar association to initiate a new proceeding on a charge of misappropriation of funds. The attorney's testimony was introduced at a second hearing, and a sanction was recommended. The Maryland Court of Appeals criticized the crippling effect of the *Ruffalo* decision but felt itself bound by the literal reading of the Supreme Court's instructions and dismissed the misappropriation charge because the sanction was based in part upon the "tainted" evidence and the attorney could not be given in the words of *Ruffalo*, an "opportunity to expunge the earlier statements and start afresh." The court, following *Cockrell*, also dismissed additional charges in *Attorney Grievance Com'n v. Walman*, 280 Md. 453, 374 A.2d 354, 360–61 (1977).

In *Committee on Professional Ethics and Grievances v. Johnson*, 447 F.2d 169 (3d Cir. 1971), the attorney at the request of his client, the landowner, solicited two offers for a tract of land in the Virgin Islands: one from his law clerk and several partners, and another from two other men. After the sale was consummated between the client and the law clerk, the would-be purchasers lodged a complaint, and the bar association initiated a proceeding alleging that the would-be purchasers were clients and that the attorney had breached his duties to them. The Committee filed formal charges with the district court. In the course of the hearing on these charges, the trial judge who was conducting the hearing became interested in the attorney's duties to the landowner client, a relationship not mentioned in the complaint. The findings, based in part upon the attorney's testimony prior to the issue of being raised, concluded that the attorney had breached his duty to the landowner and that, even if the would-be buyers were not clients, he had owed a duty to them which he had breached. The United States Court of Appeals for the Third Circuit, citing *Ruffalo*, reversed on the ground that none of the findings upon which discipline was imposed was included in the complaint that initiated the proceeding. Nonetheless, it stated in a final footnote that nothing in its decision prevented the bar association from initiating other proceedings, *id.* at 174 & n.8, suggesting that adequate notice of the nature of the charges satisfies due process without mentioning the issue of taint with which *Cockrell* was concerned.

In *Mendicino v. Whitchurch*, 565 P.2d 460 (Wyo.1977), however, the court said that *Ruffalo* did not prevent an attorney from

being sanctioned on the basis of evidence, tending to prove another disciplinary violation, that he had offered if he was not trapped into offering the evidence and where the evidence was not offered as a defense, explanation, or excuse. Similarly, in *In re Gartland*, 47 Ill.2d 177, 265 N.E.2d 148 (1970), the court held that *Ruffalo* was inapposite when a hearing on unprofessional conduct involving a loan arranged by the attorney was enlarged to consider evidence of the attorney's machinations in repaying the loan. No separate charges were brought as to the repayment, but the court held that the evidence could be weighed in deciding the sanction imposed because the attorney had stated in his answer that the loan had been repaid.

We agree with the Board that neither the Constitution nor the *Ruffalo* decision compels us to dismiss the charge brought against respondent in this case under DR 1–102(A)(4). Ruffalo defended himself from the charge that he had employed Orlando *to solicit* clients—which was clearly proscribed—by arguing that he had employed Orlando only *to investigate* pending cases. Employing an agent to investigate cases was not a proscribed activity. Only after Ruffalo admitted employing Orlando did the bar association recommend his disbarment for *employing* part-time the full-time employee of a sometimes party-opponent even though Orlando never investigated in his home yard or on company time and never breached any company confidences. Thus, apparently, Ruffalo was not denied due process because the bar association failed to give him timely notice of an additional charge of violating the disciplinary rules. Indeed the bar association amended its complaint, and Ruffalo was given a continuance to prepare a response. Rather, Ruffalo was denied due process because the bar association failed to give him prior notice that his conduct would amount to, in the words of the Supreme Court, a "disbarment offense," with the consequence that

Ruffalo was trapped into admitting that he had committed a disciplinary violation.

We are encouraged in this conclusion by Justice Douglas' citation to *Bouie v. City of Columbia*, 378 U.S. 347, 352, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), in his majority opinion in *Ruffalo* for the proposition that Ruffalo "may well have been lulled 'into a false sense of security' . . . that he could rebut the charges" brought against him by proving that Orlando was an investigator rather than a solicitor. *In re Ruffalo*, 390 U.S. at 551 n.4, 88 S.Ct. at 1226. *Bouie* arose out of an event in which two black college students took seats in a section of a restaurant that was by custom reserved for white patrons only. No signs of any sort were posted. After they were seated, a restaurant employee chained off that section of the restaurant and posted a "no trespassing" sign. The manager asked them to leave, and, when they refused, the police arrested them. They were charged under a South Carolina statute that prohibited "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry." In affirming the convictions, the South Carolina Supreme Court construed the statute to cover the act of remaining on the premises after receiving notice to leave. The United States Supreme Court reversed. Petitioners' right to due process, the Court held, was impinged upon when the South Carolina court retroactively interpreted the trespass statute to cover the case at hand. The fundamental unfairness of this action resided in the fact that the South Carolina court applied a criminal sanction to what had been non-criminal conduct, under the statute, when it had occurred. Perhaps more to the point, the law thereby provided petitioners with no notice that their conduct would be subject to criminal sanctions prior to their engaging in it. *Bouie v. City of Columbia, supra* at 355, 84 S.Ct. 1697.

Justice White's concurrence in *Ruffalo*,[8] although it speaks specifically to the recip-

---

8. Justice White was of the opinion that the basis of the decision in *Ruffalo* should have been supervisory authority rather than due process since the case dealt with regulation of

the lower federal courts and because the Supreme Court had denied certiorari to the Ohio Supreme Court in the previous appeal. *In re Ruffalo*, 390 U.S. at 552–53, 88 S.Ct. 1222.

**302**

rocal disbarment standard employed by the United States Court of Appeals, makes the same point quite forcefully:

> Even when a disbarment standard is as unspecified as the one before us, members of a bar can be assumed to know that certain kinds of conduct, generally condemned by responsible men, will be grounds for disbarment. This class of conduct certainly includes the criminal offenses traditionally known as *malum in se*. It also includes conduct which all responsible attorneys would recognize as improper for a member of the profession.

> The conduct for which the Court of Appeals disbarred [Ruffalo] cannot, however, be so characterized. [*In re Ruffalo*, 390 U.S. at 555, 88 S.Ct. at 1228.]

In the case before us, respondent admitted to fraud while testifying at a hearing on his alleged neglect. The Rules of Professional Conduct are quite clear on this point: respondent's actions were proscribed. No newly-declared standards of professional conduct were applied retroactively to respondent's actions after he had admitted to them.

Consequently, we hold that respondent had ample and timely notice that his actions were in violation of the standards of professional conduct, that he was aware of the nature of the charges against him, and that he was not lulled into a false sense of security and, thereby, trapped. The Board acted correctly in reinstating the charges brought against respondent under DR 1–102(A)(4) in the *Scales* case.

### III

Respondent also argues that the findings of the Hearing Committees and Board must be reversed because they do not enjoy the support of clear and convincing evidence on the record. He asserts that the "clear and convincing evidence" standard is appropriate because such discipline is, at the very least, quasi-criminal and may have a severe impact upon the practitioner both personally and professionally.

■ Rule 8, Sec. 5, of the Internal Rules of the Board on Professional Responsibility state that "the standard of proof at all hearings is clear and convincing evidence." This provision is found in the rule governing the activities of the Hearing Committees and thus does not appear to apply specifically to the Board. No other provision in the rules formulates the standard of proof before the Board. We note that the Hearing Committee's written decision in the *Gregory* case stated that the evidence supporting its findings was "clear and convincing." Although the written decision produced by the Hearing Committee in the *Scales* case did not expressly employ the "clear and convincing" standard, it did not employ any other standard of proof. The Board stated in its opinion that the Hearing Committee's findings and recommendations in the *Gregory* case were supported by "abundant evidence," and that the Hearing Committee's finding of neglect in the *Scales* case was supported by "ample" evidence. After reinstating the charge brought under DR 1–102(A)(4) in *Scales*, however, the Board examined the record of the proceedings before the Hearing Committee and held that evidence of fraud was "clear and convincing." Thus, it appears that the Board, when reviewing findings of the Hearing Committees, employs essentially a "substantial evidence on the record as a whole" test. However, when making its own findings, as it did with the reinstated fraud charge, it employs a "clear and convincing evidence" standard, since it is then, in essence, performing the same function as the Hearing Committee. We are satisfied that the Board acted correctly in both of these regards.

D.C.App.R. XI, Sec. 7(3), which sets forth the role of this court in bar disciplinary activities, provides in pertinent part that, "[i]n considering the appropriate order, the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence. of record." That the findings must be supported by substan-

tial evidence and that the substantial evidence standard found in D.C.App.R. XI, Sec. 7(3) tracks the substantial evidence test found in the District of Columbia Administrative Procedure Act, D.C.Code 1973, § 1–1510(3)(E), was agreed to by both the majority opinion and the dissent in the recent case of *In re Dwyer*, D.C.App., 399 A.2d 1, 11, 14 (1979). Thus, the meaning of the rule and the standard against which this court measures the Board's findings are clear.

We have reviewed the Board's findings and the record of the proceedings before the two Hearing Committees, and we conclude that all findings are supported by substantial evidence of record in accordance with our rule.

## IV

■ Finally, respondent argues that the sanctions recommended by the Board are discriminatorily harsh. He seasons this contention with the allegations that the Board has meted out lesser penalties for similar violations, that the actions of the Board and Bar Counsel were motivated by vindictiveness and political considerations, and that the paltry sums involved, and the fact that respondent has borne a civil judgment in one of the cases, should have tempered the sanctions recommended by the Board.

D.C.App.R. XI, Sec. 7(3), which sets forth the role of this court in dispensing disciplinary sanctions, provides in pertinent part that the court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." The rule endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse in that discretion's exercise. The rule requires that we enforce a general sense of equality in the sanctions handed out, but it otherwise commands that we should respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable. Each of these decisions emerges from a forest of varying considerations, many of which may be unique to the given case. In broad terms we may note that a list of considerations common to most cases would include the moral fitness of the attorney, the nature of the particular violation with which he is charged, and the need to protect the public, the courts, and the legal profession. Within the limits of our mandate to achieve a rough equality, each case must be reviewed upon its own terms.

In the proceeding before it, the Board noted that respondent acted with "callous disregard" for the interests of his clients as evidenced by his acts of fraud, abandonment, and neglect. We are of the opinion that suspension from the practice of law as a penalty for respondent's actions in either of the two cases heard by the Board would not be unreasonable and that an eighteen-month suspension is not of an unreasonable duration in light of the confluence of violations the Board had before it.

The record does not reveal, nor does respondent point out, any circumstance within the facts of either case before the Board that might mitigate the apparent severity of respondent's violations. Even if some mitigating circumstances were to be revealed, we still would have to find that the Board acted unreasonably in disregarding it. Such is not the case here. We find no indication that either the Board or Bar Counsel acted with personal or political animus towards respondent. Neither are we persuaded that the sanctions recommended should be moderated because the sums involved in the two cases are relatively small or because respondent has been assessed money damages for his actions in one of them. To accede to this argument would cheapen bar discipline, and we decline the invitation to debase the metal of these proceedings in this manner.

## V

Conrad P. Smith, a member of the Bar of this court, is ordered to make restitution of the $280 fee paid in the *Scales* case and,

further, he is suspended from the practice of law for a period of eighteen months.

*So ordered.*