**In the Matter of S.,\* Respondent.**

**No. 87–90.**

District of Columbia Court of Appeals.

July 27, 1990.

\* Pending final disposition of these proceedings, respondent's initial is used pursuant to D.C.Bar Rule XI, § 17(b) (1989), and the disciplinary matters are reported herein under the case number of the incapacity proceeding. Rule XI of the District of Columbia Bar Rules was amended on September 1, 1989. Since the matters involved in this appeal occurred prior to this amendment, we hereinafter refer to the 1988 edition of the Bar Rules. The 1989 Rules are identical in all pertinent respects to those governing at the time these matters were initiated.

J. Paul Malloy, for respondent.

Michael S. Frisch, Asst. Bar Counsel, with whom Thomas E. Flynn, Bar Counsel, Washington, D.C., was on the brief, for Office of Bar Counsel.

Joan L. Goldfrank, Executive Atty., Washington, D.C., for Bd. on Professional Responsibility.

** Senior Judge Mack was an Associate Judge of this court when this case was argued. She was commissioned as a Senior Judge on December 1, 1989.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and MACK, Senior Judge.**

PER CURIAM:

This attorney discipline case calls on us again[1] to address the problems associated with alcohol abuse by members of the bar of the District of Columbia. Before us are three matters involving respondent, two alleging violations of disciplinary rules (*S. I* and *S. II*) and the third recommending that respondent be suspended as incapacitated to practice law (*S. III*).

I

A

*S. I,* a *de novo* disciplinary proceeding initiated after another jurisdiction suspended respondent from the practice of law for three years, involved respondent's refusal to return a fee collected as an advance to pay for certain costs and his failure to maintain complete records of client accounts. The Hearing Committee to which the matter was referred found that respondent violated Disciplinary Rule 9–103(B)(4) (failure to "[p]romptly pay ... to the client ... funds ... which the client is entitled to receive") and Disciplinary Rule 9–103(B)(3) (failure to "[m]aintain complete records of all funds ... coming into the possession of the lawyer"), and proposed a sanction of public censure. The Board on Professional Responsibility ("the Board") adopted those findings and recommended that this court enter an order publicly censuring the respondent.

*S. II* involved respondent's refusal to return a case file to a client after a fee dispute arose. Bar Counsel also alleged that respondent had practiced law while on suspension from the practice of law for non-payment of District of Columbia bar dues. The Hearing Committee concluded that respondent had violated Disciplinary Rule 9–103(B)(4) (failure to "[p]romptly ... deliver to the client as requested by client

1. *See, e.g., In re Kersey,* 520 A.2d 321 (D.C.1987).

the ... properties in the possession of the lawyer which the client is entitled to receive") and Disciplinary Rule 3–101(B) (practicing law under suspension "in violation of regulations of the profession" in the District of Columbia), and proposed a sanction of public censure. The Board affirmed the Hearing Committee's findings that respondent had violated the Disciplinary Rules. It determined, however, that because of respondent's previous violation in *S. I,* a more serious sanction was warranted. The Board recommended that this court suspend respondent from the practice of law for thirty days.

### B

The issue of respondent's alcoholism arose in both *S. I* and *S. II.* In both cases, Bar Counsel was unsuccessful in his efforts to make information about respondent's alcohol abuse part of the overall picture the Board considered in recommending sanctions to this court.

In *S. I,* the order of the state disciplinary board which triggered disciplinary action in the District stated that "[a] review of the records and evidence before the [state board] indicates clearly that [S.] was suffering from alcoholism during the period of the acts of misconduct."[2] Moreover, shortly after learning that the Board intended to bring a disciplinary action in the District for respondent's conduct in *S. I,* respondent, through counsel, wrote to the Office of Bar Counsel. The letter indicated that "[S.] is a recovering alcoholic" and requested that proceedings be suspended "until his disability is removed." Additionally, in his answer to the charges in *S. I,* respondent stated that he intended to "offer evidence of his disease [addiction to alcohol], how it affected his life, personally as well as professionally, its causative relationship to his problems, and the sustained efforts he has made and continues to make toward recovery...."

Respondent ultimately did not seek to introduce evidence of his alcoholism as a mitigating circumstance before the Hearing Committee in *S. I,* however. As a result, the Hearing Committee concluded that:

> [A]lcoholism is not relevant to the case before us, which concerns violations to Canon 9. Alcoholism plainly is not relevant on the merits. Neither is it relevant to the sanction: Respondent does not rely on alcoholism in mitigation and, as far as Bar Counsel is concerned, we do not see how it could be used in aggravation. It seems to us that [S.'s] conduct is worthy of censure (or, possibly, a brief suspension) whether or not it was caused by alcoholism.

The Hearing Committee therefore did not permit any examination by Bar Counsel about respondent's alcoholism, and it also rejected Bar Counsel's request for a full inquiry about "respondent's alcoholism and present physical condition" as a prerequisite to any recommendation on discipline.

The Board, in reviewing the Committee's findings, expressed its belief that the Hearing Committee had "properly resolved the issue of alcoholism raised by Bar Counsel." As a matter of policy, the Board indicated, questions about alcoholism should not be introduced in a disciplinary matter unless the respondent first raises the issue in mitigation. Otherwise, the Board indicated, the proper manner for Bar Counsel to deal with cases involving lawyers impaired by alcoholism is to bring a separate incapacity action under D.C.Bar Rule XI, § 16(3) (current provision codified at D.C.Bar R. XI, § 13(c) (1989)) [hereinafter "section 16(3)"].

Bar Counsel met with similar results in its efforts to convince the Hearing Committee and the Board to consider respondent's alcoholism in *S. II.* The Board reiterated that a separate section 16(3) petition is the appropriate vehicle where Bar Counsel questions a respondent's present fitness to practice law because of alcoholism, at least where respondent has not raised alcoholism in mitigation.

### C

The day after the Hearing Committee refused in *S. II* to consider evidence of

---

**2.** The state board further noted that it was "handcuffed in reaching a disposition" because the sanctions available in disciplinary actions "are largely inapplicable to impaired attorneys."

respondent's alcoholism in the context of a disciplinary hearing, Bar Counsel once again brought respondent's alcoholism to the attention of District disciplinary authorities by filing with the Board an application for an order requiring respondent to submit to a medical examination.[3] The Board in turn petitioned this court to order a medical examination of respondent to determine his mental and physical fitness to continue to practice law;[4] the court granted both that petition and a later request for supplemental testing.

Two medical experts conducted examinations of respondent. Both submitted reports to, and testified before, the Hearing Committee empaneled to hear *S. III.*[5] Based on the evidence before it, the Hearing Committee, in its Report and Recommendation, found that respondent suffered from alcoholism, and that he had regularly suffered relapses into active drinking, even after completing two inpatient treatment programs. The Committee also found that respondent's alcoholism had impaired his neuropsychological functioning, and that the disease "has had a substantial negative effect on his ability to practice law." When drinking, the Committee found, respondent is incapacitated from practicing law.

In recommending a disposition, the Committee stated that the focus "must be on recovery." Because of concerns that respondent had not overcome denial of his alcoholism, the Committee recommended that respondent be suspended from the practice of law for five years and thirty days. The Committee recommended staying five years of the suspension and placing respondent on probation for five years.[6] The suggested conditions on probation included:

1. Total abstinence from the use of alcohol, "to be verified by a sobriety monitor."

2. Supervision of respondent's professional conduct by a "practice monitor."

3. Supervision of respondent's professional financial activities by a financial monitor.

In its report to this court, the Board determined that the Hearing Committee's findings of fact were supported by clear and convincing evidence. Moreover, the Board was satisfied that respondent's recovery was still "in serious doubt," and that he was susceptible to relapse. It therefore concluded, as had the Hearing Committee, that respondent was "incapacitated from practicing law by reason of addiction to alcohol within the meaning of Section 16(3) of Rule XI." The Board, however, recommended a more severe disposition than had the Committee. Because it feared that the danger of relapse by respondent posed a genuine threat of injury to the public, the Board elected to recommend that respondent be suspended indefinitely. The Board explained that respondent could apply for reinstatement provided he could establish "significant evidence of rehabilitation" which justifies a "conclusion that his 'disability has been removed' " under D.C.Bar Rule XI, § 16(5) (1988) (current provision codified at D.C.Bar R. XI,

---

3. Bar Counsel filed its request pursuant to D.C.Bar Rule XI, § 16(2) (1988) (current provision codified at D.C.Bar R. XI, § 13(b) (1989)) [hereinafter "section 16(2)"], which provided for examinations "relevant to the subject matter" of an ongoing disciplinary matter. *See infra* p. 161.

4. Consistent with its rulings in *S. I* and *S. II,* the Board filed its petition under section 16(3), and thus implicitly treated respondent's alcoholism as an issue distinct from any disciplinary matters. Bar Counsel's application, in contrast, treated alcoholism as a matter "relevant to the subject matter of the complaint" in *S. II. See supra* note 3.

5. The Committee also had before it documents from the *S. I* and *S. II* matters, records from an alcohol treatment program to which respondent was admitted in 1986, and a 1983 letter from a doctor who founded the hospital alcohol treatment unit to which respondent was admitted in 1983.

6. The Committee also recommended that for the thirty days of suspension not stayed, respondent be suspended concurrently with the recommended suspension in *S. II.*

§ 13(g) (1989)).[7]

## II

■ In the apparent view of the Hearing Committees and the Board in *S. I* and *S. II,* alcohol abuse which seriously impinges on a lawyer's professional performance and particular instances of attorney misconduct are issues to be considered in separate proceedings. At least where a respondent does not raise the question of alcohol abuse as a mitigating circumstance in a disciplinary matter, the Board would deal with alcoholism and misconduct independently of one another. Admittedly, the structure of our Bar Rules might be interpreted as endorsing this position. At the time these matters arose, proceedings governing the suspension of attorneys on the grounds of incapacity were authorized by section 16(3),[8] a procedural vehicle technically distinct from that governing disciplinary matters in section 7. Nevertheless, we do not read Rule XI as requiring Hearing Committees and the Board to consider allegations of incapacity separately from allegations of misconduct. Rather, where there is evidence of a causal nexus between misconduct and alcohol-induced incapacity, we are of the view that the appropriate practice is to view the two matters together, as part of a single tableau.

Considering the question of whether a lawyer's alcohol abuse has incapacitated him or her from the ability to practice law separately from existing allegations of misconduct could result in judgments based on incomplete and overly abstract assessments. Our Bar Rules provide for suspension of lawyers "incapacitated from continuing the practice of law," not for the suspension of lawyers incapacitated in some general or abstract way. In any case where Bar Counsel suspects that a lawyer has an alcohol abuse problem, a pivotal issue is how the condition affects the lawyer's ability to function in his or her professional role. And while medical and psychological evidence can certainly provide valuable insight into the question, it is ultimately one which should be assessed by peer attorneys in light of prevailing norms of professional conduct.

As a practical matter, the question of whether a lawyer is unfit to practice law due to alcohol abuse will often arise in the course of the investigation of a specific disciplinary violation.[9] Moreover, as was

---

**7.** At the time of the Board's Report in *S. III,* D.C.Bar Rule XI, § 16(5) provided, in pertinent part:

Any attorney suspended under the provisions of this [incapacity] Rule shall be entitled to apply for reinstatement once a year, or at such shorter intervals as the Court may direct in its order of suspension or any modification thereof. Such application shall be granted by the Court upon a showing by clear and convincing evidence that the attorney's disability has been removed and that he is fit to resume the practice of law.

Because the Board did not recommend that this court permit respondent to seek reinstatement in intervals shorter than a year, the Board effectively recommended a minimum suspension of at least one year.

**8.** At the time of *S. III,* section 16(3) provided:

Whenever the Board shall petition the Court to determine whether an attorney is incapacitated from continuing the practice of law by reason of mental infirmity or illness or because of addiction to drugs or intoxicants, the Court may take or direct such action as it deems necessary or proper to determine whether the attorney is so incapacitated, including the examination of the attorney by such qualified medical experts as the Court shall designate. If, upon due consideration of the matter, the Court concludes that the attorney is incapacitated from continuing to practice law, it shall enter an order suspending him on the ground of such disability for an indefinite period and until further order of the Court, and any pending disciplinary proceeding against the attorney shall be held in abeyance. In a case of addiction to drugs or intoxicants, the Court alternatively may consider the possibility of probationary conditions.

D.C.Bar R. XI, § 16(3) (1988) (current provision codified at D.C.Bar R. XI, § 13(c) (1989)).

**9.** This, of course, does not mean that the Office of Bar Counsel must prove prior disciplinary violations in any case where it seeks to have an alcoholic attorney suspended under section 16(3). Evidence linking a respondent's alcoholism to his or her performance could come in many forms. For example, a Hearing Committee might consider any available testimony of clients who can attest to the caliber of the lawyer's representation. It might consider the testimony of colleagues who can describe the lawyer's performance in negotiations or at trial. It might also examine particular pleadings or in-

true here, the incapacity question will often present itself only after Bar Counsel has already initiated the disciplinary charge, and the misconduct in question may well form a telling specific instance of the alcoholism's adverse impact on the lawyer's general fitness to practice law. Our Bar Rules explicitly provide for a mechanism which enables a Hearing Committee to consider alcoholic incapacity together with alcoholism-induced misconduct. At the time these disciplinary matters arose, section 16(2) provided:

If, *at any time prior to its final disposition of a disciplinary proceeding,* the Board has good cause to believe that the mental or physical condition of the respondent is relevant to the subject matter of the complaint and is a factor which should be considered by it, it may apply to the Court for an order requiring the respondent to submit to an appropriate examination, such application to be by petition on notice to the respondent and accompanied by a statement by the Board setting forth in detail its reasons for the application and the relevance of the examination to its investigation or deliberations.

D.C.Bar R. XI, § 16(2) (1988) (emphasis supplied) (current provision codified at D.C.Bar R. XI, § 13(b) (1989)). Thus, on its own terms, section 16(2) contemplates that questions of attorney fitness might arise in the course of a disciplinary proceeding. Where they do, and where the result of a section 16(2) investigation induces Bar Counsel to seek an incapacity suspension of the attorney, the suspension matter should be consolidated with the initial disciplinary matter. As we read the rules, they do not require a Hearing Committee in a disciplinary matter to close its eyes to serious allegations of incapacity caused by alcohol abuse.

struments drafted by the lawyer to see if alcohol abuse has led to substandard performance. With a nexus between the lawyer's alcoholism and deficient performance, a Hearing Committee could use a wide range of evidence to inform its decision about a lawyer's fitness to practice law.

## III

S. III demonstrates the difficulties that may be created when a proceeding designed to determine whether a lawyer is incapacitated from the practice of law by virtue of his or her alcoholism is conducted separately from disciplinary proceedings which are factually related to the incapacity question. The major oral testimony before the Hearing Committee, other than that of the respondent and two witnesses called by him, was that of the medical experts. The experts established that the respondent suffers from alcoholism. They also provided the Committee with considerable information about the physiological and psychological effects of the disease on respondent. For instance, on the basis of respondent's performance on various psychological tests, one of the experts, a psychiatrist specializing in alcoholism, testified that respondent was a "third stage" alcoholic, *i.e.*, in the most advanced stage, where there begins to be fairly clear and persistent tissue damage. Additionally, the other expert witness, a clinical neuropsychologist, indicated that respondent's performance on a comprehensive battery of psychological and neuropsychological tests revealed intelligence scores "considerably lower than those of the average practicing attorney." This was particularly true of respondent's ability to perform "nonverbal, problem-solving tasks." [10] In his view, these scores demonstrated evidence of impaired neurophysiological functions and of organic brain dysfunction.

After presenting this array of evidence, though, the medical experts could offer only limited insight into the effect of respondent's alcoholism on his ability to practice law. For instance, in his report, one of the experts indicated that, as a practicing psychiatrist, he was not "well equipped to judge [respondent's] fitness to return to

**10.** In other areas, including memory and vocabulary tests, respondent scored "well within" what the neuropsychologist thought was an acceptable range.

**162**

the practice of law."[11] He also felt unqualified to give an opinion as to whether respondent would be competent to practice law if he abstained from drinking.[12] When asked about respondent's prognosis, the psychiatrist testified that he found it "hard to say with much certainty." The neuropsychologist's testimony was similarly inconclusive on the ultimate issue—respondent's capacity to practice law. He made clear that he did not feel qualified "to study [respondent's] performance on the job," and that "one's colleagues would have a better understanding and perhaps make better judges of that."

The disassociation of the incapacity proceeding from the two disciplinary actions, possibly diverting both Bar Counsel and the disciplinary members from fully pursuing the issue, may have contributed to the paucity of other evidence before the Hearing Committee in *S. III* precisely relating respondent's alcoholism to professional actions manifesting a present incapacity to practice law. The instances of misconduct forming the basis of the disciplinary proceedings were apparently evidence of such a nexus, although admittedly several years in the past; but the findings of fact simply observe that respondent admitted in the state disciplinary proceedings, as well as in the initial stages of the District proceedings, that his alcoholism caused his misconduct. Nor was much other evidence presented at the hearing of other specific instances relating respondent's alcoholism to actual or imminent client neglect, incom-

petent legal performance, or other professional malfeasance.[13]

We do not for a moment negate the importance of the concern of the Hearing Committee and the Board about respondent's relapses into active drinking and the effect on his capacity to practice law at such times.[14] Our concern arises because the evidentiary record does not appear quite as extensive as it seemingly could be in dealing with the linkage of respondent's alcoholism to available specific manifestations of general incapacity to practice law so as to underpin the indefinite suspension at this point recommended to us by the Board.

Under the circumstances, we feel constrained to remand these proceedings for further inquiry into the question of respondent's present[15] capacity to practice law, both in relation to the misconduct involved in the disciplinary proceedings and as may be manifested subsequently by available evidence.

*So ordered.*

**11.** He explained, "I am not an attorney, I don't practice law, I don't know what sorts of tasks are available to the attorney and I would not presume to know [lawyers'] obligations in this regard to the general public."

**12.** The psychiatrist did testify that in his opinion respondent "would not be competent [to practice law] if he was drinking."

**13.** After the hearing in *S. III,* one witness for respondent submitted a supplemental affidavit. The witness indicated that he spoke with respondent by phone after the *S. III* hearing, and that respondent appeared to be under the influence of alcohol. The witness also stated that the papers he had retained respondent to prepare were poorly drafted and "worthless." If, in the judgment of a Hearing Committee, respon-

dent's work was in fact incompetent, it would provide strong evidence of alcoholism-related incapacity, but the affidavit came too late to be part of the fully contested record.

**14.** The precise frequency and duration of such relapses are not readily ascertainable from the record, although the evidentiary problems in such proof are of course recognizable.

**15.** The passage of time in this case also warrants a more current assessment of respondent's condition with respect to his alcoholism. Both the Board Report and assertions made at oral argument and subsequently suggest the existence of further relevant information. *See also supra* note 13. Present circumstances may also bear on the issue of appropriate action. *Cf. In re Peek,* 565 A.2d 627 (D.C.1989).